**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| **SIERRA CLUB** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| ) | |
| **EAST KENTUCKY POWER** ) | |
| **COOPERATIVE, INC.,** ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

## COMPLAINT

Plaintiff Sierra Club bring this citizen suit under the Clean Air Act against

East Kentucky Power Cooperative, Inc. (EKPC) to stop EKPC from illegally

emitting from its Hugh L. Spurlock Generating Station Unit #4 (Spurlock 4) toxic

pollutants**,** which will cause cancer, birth defects and other illnesses in the people

of Kentucky.

## INTRODUCTION

1.      Plaintiff seek declaratory and injunctive relief, including remediation

for illegal discharges of toxic pollutants, and civil penalties against EKPC for

violations of Section 112(g) of the Clean Air Act, 42 U.S.C. § 7412(g), which

prohibits construction and modification of major sources of hazardous air

pollutants in the absence of a final determination that the facility will achieve a

level of hazardous air pollutant emissions control that satisfies the Maximum Achievable Control Technology ("MACT") requirements of the Clean Air Act. Applicable MACT provisions specify procedural and substantive requirements to assure that all new or modified major sources of hazardous air pollutants will reduce emissions of such pollutants by the maximum achievable amount.

2.     The Clean Air Act clearly requires that the MACT determination be secured before constructing a major source of hazardous air pollutants.  Clean Air Act § 112(g)(2)(A) & (B), 42 U.S.C. § 7412(g)(2)(A) & (B).

3.     EKPC commenced construction after July 31, 2006, of the 300 megawatt circulating fluidized bed coal and waste fired Spurlock 4 at the Spurlock Generating Station in Mason County, Kentucky, without first securing the required regulatory determination that the facility will operate at MACT levels for the hazardous air pollutants it will emit.

4.     In May, 2008, the Sierra Club sent notification to EKPC that it was required to obtain a MACT determination for the Spurlock 4 plant.  Nevertheless, EKPC failed to obtain a MACT determination prior to construction and repeatedly violated the Clean Air Act by continuing construction.  EKPC has, therefore, continually violated the Clean Air Act by continuing construction without a MACT determination and without filing an application for a MACT determination. Spurlock 4 threatens serious harm to the health of the surrounding communities. The United States Environmental Protection Agency ("EPA") has found that coal-fired power plants, such as Spurlock 4, emit 67 of the 188 individual Hazardous

Air Pollutants Congress listed for regulation under the 1990 Clean Air Act Amendments. Mercury contamination provides one example of the way hazardous air pollutants emitted by electric utility steam generating units pose serious health threats to people in Kentucky. All of Kentucky's waterways suffer from a fish consumption advisory for mercury contamination. Recent studies show that most of the mercury pollution comes from local and regional coal-fired sources. Once mercury is deposited in Kentucky water bodies, highly toxic methyl mercury forms, which, then, accumulates in fish tissue and threatens human health. Many fish species over a large portion of the state have high mercury concentrations, and many in Kentucky routinely consume locally-caught fish. Fetuses, breast-fed infants, and children exposed to methyl mercury when they or their mothers consume contaminated fish are at particular risk for developing permanent neurological disorders, including mental retardation, vision loss, delayed developmental milestones, attention deficits, memory problems, auditory processing problems, language difficulties, ataxia, and, in extreme cases, seizures. Federal agencies estimate that 600,000 U.S. children born each year have learning deficits from mercury exposure.

5.      Other hazardous air pollutants emitted by power plants include arsenic, dioxins, acid gases, selenium, lead, and other heavy metals that have been shown to cause serious adverse health effects, including cancer, heart disease, stroke, and neurological impairment. One of those pollutants, dioxin, is among the most potent carcinogens on the planet. Dioxin is controllable by a pollution control

device called selective catalytic reduction (SCR). Spurlock 4 does not have a SCR. However, Spurlock 4 could be retrofit with an SCR to control dioxin and other pollutants.

6.     Sierra Club's members are harmed by EKPC's violations of the Clean Air Act. In order to redress this harm, Plaintiff asks the Court, pursuant to the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, to (1) declare that EKPC's construction of Spurlock 4 without an approved MACT determination is illegal under Section 112 of the CAA, 42 U.S.C. § 7412; (2) enjoin EKPC from construction or operation of the Spurlock 4 until and unless EKPC complies with the Clean Air Act and any applicable regulatory requirements; (3) assess civil penalties and funds for a beneficial mitigation project against EKPC for its violations of the CAA to off-set pollution in the area impacted by the illegal pollution from the Spurlock 4 plant and in the area where Plaintiffs' members live, work, and recreate; (4) require EKPC to mitigate its past illegal emissions; (5) award Plaintiff its cost of litigation.

## JURISDICTION AND VENUE

7.     This case is a Clean Air Act citizen suit. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. § 1331 (Federal Question Jurisdiction).

8.   Spurlock 4 is located in this District.  Thus, venue is proper in this District pursuant to 42 U.S.C. § 7604(c)(1).  Lexington is the correct jury division because EKPC's resides in Clark County, Kentucky.

## NOTICE

9.   Pursuant to 42 U.S.C. § 7604(b)(1)(A), Sierra Club provided EKPC and its regulators with notice of its intent to sue.  EKPC and the regulators received this notice by no later than May 12, 2008.

10.   At least 60 days have elapsed since Plaintiff provided notice of the violations alleged in this complaint.  Neither the EPA nor the Commonwealth of Kentucky has commenced and diligently prosecuted a civil action in a court to require compliance with the violations alleged in this complaint.

## THE PARTIES AND STANDING

### Plaintiff

11.   Plaintiff, the SIERRA CLUB, is a national grassroots nonprofit membership conservation organization formed in 1872 and headquarter in San Francisco County, California, with over 750,000 members nationally and over 4,000 members in Kentucky.  The Sierra Club has a statewide chapter in Kentucky called the Cumberland Chapter and five groups including a Northern Kentucky group and a Bluegrass Group.  The Cumberland Chapter has a long history of working to reduce power plant emissions that adversely affect air quality in the state and of educating the public and governmental decision-makers regarding those emissions.

12.    Members of the Sierra Club live, work, farm, garden and recreate in areas that are being affected by the excessive amounts of mercury and other hazardous air pollutants that Spurlock 4 is emitting, and will continue to do so in the future.  These members are concerned that they will suffer, and are suffering the direct, negative health impacts of breathing and otherwise being exposed to hazardous air pollutants emitted by Spurlock 4 in excess of legal limits.  Mercury and heavy metals emissions from Spurlock 4 also interferes with their use and enjoyment of waterways, including the Ohio, Kentucky and Little Miami Rivers, and cause them to alter their fishing and fish consumption habits or risk adverse health effects from eating mercury-contaminated fish.  EKPC's construction and operation of Spurlock 4 without an approved MACT determination will harm and is harming these members' health, economic, recreational, and aesthetic interests, while denying them the opportunity to participate in a public process addressing the plant's emission of hazardous air pollutants.  Sierra Club is harmed in its educational missions by the Defendant's disregard of the legal process for demonstrating and securing approvals for MACT emission levels for hazardous air pollutants.  This disregard hinders Plaintiff's collection of the data and analyses on which their educational outreach efforts are based.  The above described activities and harms will continue to occur.  A decision requiring EKPC to cease construction and operation of Spurlock 4 until it obtains a lawful MACT determination would redress these harms to Plaintiff and its members.

**Defendant**

13.     Defendant EKPC is a Generation and Transmission Cooperative which is owned by 16 electric distribution cooperatives in Kentucky.  EKPC resides in Clark County, Kentucky.  EKPC owns and operates the Spurlock Station.  EKPC modified Spurlock Station by adding Spurlock 4.  EKPC owns, operates, and constructs Spurlock 4.

14.     EKPC is a "person" within the meaning of 42 U.S.C. § 7602(e).

## LEGAL BACKGROUND

15.     Section 112(g)(2)(B) of the Clean Air Act prohibits any person from "construct[ing] . . . any major source of hazardous air pollutants unless the Administrator (or the State) determines that the maximum achievable control technology emission limitation under this section for new sources will be met."  42 U.S.C. § 7412(g)(2)(B).  Similarly, Section 112(g)(2)(A) of the Clean Air Act prohibits any person from "modify[ing] a major source of hazardous air pollutants unless the Administrator (or the State) determines that the maximum achievable control technology emission limitation under this section for new sources will be met."  42 U.S.C. § 7412(g)(2)(A).  These sections, further, require that the MACT determination "shall be made on a case-by-case basis where no applicable emission limitations have been established."  42 U.S.C. § 7412(g)(2)(A) & (B).  There must be emission limitations for each hazardous air pollutant that the source will emit.  See Nat'l Lime Ass'n. v. Envtl. Prot. Agency, 233 F.3d 625, 633-34 (D.C. Cir. 2000).

16.     Pursuant to federal regulations implementing Section 112(g), a
MACT determination must identify and require a level of control that "shall not be
less stringent than the level of emission control which is achieved in practice by
the best controlled similar source" (the "MACT floor") and which goes beyond the
MACT floor as much as possible utilizing the most current control technologies
and taking into consideration relevant costs and other considerations.  40 C.F.R. §
63.43(d)(1) and (2).  See also 401 KAR 63:002 § 2(2)(requiring compliance with
40 C.F.R. § 63.43(d)(1) and (2)).

17.     EPA regulations governing the process for conducting a case-by-
case MACT determination provide the public the right to comment upon a
proposed MACT determination and a right to appeal the final MACT
determination.  See 40 C.F.R. § 63.43(h).  See also 401 KAR 63:002 §
2(2)(requiring compliance with 40 C.F.R. § 63.43(h)).

18.     In 2000, the EPA added coal and oil-fired electric utility steam
generating units to the sources listed under Section 112(c) and subject to Section
112's emission standards including Section 112(g).  See 65 Fed. Reg. 79,825,
79,826 (December 20, 2000).  An electric utility steam generating unit is defined
in the Clean Air Act as "any fossil-fuel-fired combustion unit of more than 25
megawatts that serves a generator that produces electricity for sale."  42 U.S.C. §
7412(a)(8).  Thus, a large coal-fired power plant is an electric utility steam
generating unit.  See Regulatory finding on the Emissions of Hazardous Air
Pollutants from Electric Utility Steam Generating Unit, 65 Fed. Reg. 79,825,

particularly at 79,830 (December 20, 2000) and the *Study of Hazardous Air Pollutant Emissions from Electric Utility Steam Generating Units* – Final Report to Congress ("Utility Study"), at ES 1-2 4 (February 1998), available at http://www.epa.gov/ttn/caaa/t3/reports/utilexec.pdf  In summary, the EPA found that:

> Electric utility steam generating units are the largest domestic source of mercury emissions, and mercury in the environment presents significant hazards to public health and the environment.  . . .  It is necessary to regulate HAP emissions from coal- and oil-fired electric utility steam generating units under Section 112 of the CAA because the implementation of other requirements under the CAA will not adequately address the serious public health and environmental hazards arising from such emissions . . . and which Section 112 is intended to address.  Therefore, the EPA is adding coal- and oil-fired electric utility steam generating units to the list of source categories under Section 112(c) of the CAA.

19.    After a source category is placed on the Section 112(c) list, all new and modified facilities in that category must obtain a case-by-case MACT determination.  See 42 U.S.C. 7412(g)(2)(A) & (B).  The EPA must also eventually set maximum achievable HAP emissions standards for that category, at which point all new and modified plants must meet those standards and no longer must obtain case-by-case determinations.  See 42 U.S.C. §§ 7412(d), 7412(g)(2)(A) & (B).  The EPA has not yet promulgated maximum achievable hazardous air pollutant emission standards for electric utility steam generating units

20.    In 2005, the EPA purported to remove electric utility steam generating units from the list of sources subject to Clean Air Act Section 112.  <u>See</u> 70 Fed. Reg. 15,993 (Mar. 29, 2005).  However, EPA regulations provide that, once a source is listed, the source may only be "deleted from the source category list pursuant to Section 112(c)(9) of the federal Clean Air Act." <u>See</u> 40 C.F.R. § 63.40(e).  The EPA did not purport, in its 2005 action, to delist electric utility steam generating units pursuant to Section 112(c)(9) of the Clean Air Act. Therefore, EPA's decision was challenged in the D.C. Circuit Court of Appeals by numerous states, tribes, and environmental organizations.  That lawsuit was pending and a matter of public record when EKPC began construction of Spurlock 4.  EKPC had actual knowledge of the lawsuit challenging the delisting of electric utility steam generating units prior to construction on Spurlock 4.

21.    On February 28, 2008, the D.C. Circuit Court of Appeals vacated as unlawful the EPA's attempt to delist electric utility steam generating units from the list of sources regulated under Section 112 of the Clean Air Act.  <u>New Jersey v. EPA</u>, 517 F.3d 574 (D.C. Cir. 2008).  The D.C. Circuit held that power plants "remain listed under Section 112." <u>Id</u> at 583.  The D.C. Circuit issued the mandate in <u>New Jersey v. EPA</u> on March 14, 2008, restoring both the listing of coal-fired power plants under Section 112 of the Clean Air Act and the legal requirement to obtain and comply with case-by-case MACT limits at Spurlock 4. <u>See</u> <u>Southern Alliance for Clean Energy v. Duke Energy Carolinas</u>, Civil No. 1:08CV318, 2008 WL 5110894 (W.D.N.C. Dec. 2, 2008).  However, EKPC did

not stop construction of Spurlock 4, nor even apply for a MACT determination, after the D.C. Circuit issued the mandate.

22.    The obligations in Clean Air Act Section 112 apply to the Spurlock 4 plant.  The EPA granted final approval of the Kentucky Title V operating permit program on October 31, 2001.  See 66 Fed. Reg. 54,953 (Oct. 31, 2001).  Therefore, the prohibitions of constructing and modifying a major source of hazardous air pollutants without a MACT determination was applicable in Kentucky long before EKPC began constructing Spurlock 4.  See 42 U.S.C. § 7412 (g)(2)(A) & (B).

23.    Pursuant to the citizen suit provision of the Clean Air Act, any person may commence a civil action for violation of a Clean Air Act emission standard or limitation, including the requirements of Section 112(g).  42 U.S.C. § 7604(a), (f).  The Clean Air Act's citizen suit provision allows citizens to seek injunctive relief and civil penalties payable to the U.S. Treasury of up to thirty-seven thousand five hundred dollars ($37,500.00) per day for each separate violation of the Clean Air Act, 42 U.S.C. §§ 7413(b); 7604; 40 C.F.R. § 19.4; 74 Fed. Reg. 626 (January 7, 2009).

## FACTUAL BACKGROUND

24.    EKPC's Spurlock 4 is a Coal fired Circulating Fluidized Bed (CFB) boiler with a rating 2800 MMBtu/hr (or 300 megawatts).  Therefore Spurlock 4 meets the definition of an electric utility steam generating unit under 42 U.S.C. § 7412.

25. Spurlock Station is a "major source" of hazardous air pollutants under Clean Air Act Section 112(a)(1), because it has the potential to emit over 25 tons per year of hazardous air pollutants and over 10 tons per year a single hazardous air pollutant.

26. On July 31, 2006, the Kentucky Division of Air Quality issued EKPC a combined Prevention of Significant Deterioration/Title V permit for Spurlock Station. The Kentucky Division of Air Quality described the permit this way:

> An application for renewal of Title V Permit V-97-050 Revision II for the East Kentucky Power Cooperative Inc.-Hugh L. Spurlock Generating Station was received on June 8, 2004. The permit renewal is combined with renewals of the Phase II Acid Rain and NOx Budget permits, and is combined with a major modification for the construction of boiler Unit 04 (Emission point 17).

27. EKPC commenced construction of Spurlock 4 shortly after July 31, 2006.

28. As of July 31, 2006, EKPC had not obtained a determination from the EPA or the Kentucky Division of Air Quality that Spurlock 4 will meet MACT emission limits for hazardous air pollutants. Additionally, as of February 8, 2008, the date of the decision from the D.C. Circuit Court of Appeals vacating the EPA's attempt to delist electric utility steam generating units, EKPC still had not attempted to obtain a MACT determination and was still constructing Spurlock 4.

29. As of the date of the filing of this Complaint, EKPC has not obtained a MACT determination from the EPA or the Kentucky Division of Air Quality.

# CLAIMS FOR RELIEF

## COUNT ONE: CONSTRUCTION WITHOUT A MACT DETERMINATION

30.     Plaintiff repeats and incorporates the allegations in the preceding paragraphs.

31.     Sierra Club is a "person" as that term is used in 42 U.S.C. § 7604(a).

32.     EKPC is a "person" as that term is used in 42 U.S.C. § 7604(a)(1).

33.     The case-by-case MACT requirements of Clean Air Act § 112(g) are emission standards or limitations as that term is used in 42 U.S.C. § 7604(a)(1). See 42 U.S.C. § 7604(f)(3).

34.     EKPC is the owner and operator of the Spurlock Station and Spurlock Unit 4.  EKPC is constructing, or has constructed, Spurlock 4 over multiple days as the term "construct" is used in 42 U.S.C. § 7412(g)(2)(B).

35.     Spurlock 4 is a coal-fired electric utility steam generating unit, which is a listed source category of hazardous air pollutants under Clean Air Act Section 112(c).  42 U.S.C. § 7412(a)(8); 65 Fed. Reg. 79,825.  No applicable emission limitations have been established by the Administrator for coal-fired electric utility steam generating units.

36.     Spurlock 4 is a "major source of hazardous air pollutants" as those terms are used in 42 U.S.C. § 7412(a)(1).  Thus, Spurlock 4 is subject to Clean Air

Act Section 112(g)(2)(B)'s prohibition on construction of a major source of hazardous air pollutants without a MACT determination.

37.     EKPC has commenced construction and repeatedly constructed Spurlock 4 in violation of CAA Section 112(g)(2)(B), 42 U.S.C. § 7412(g)(2)(B), and federal and state implementing regulations.


## ALTERNATIVE COUNT TWO: MODIFYING WITHOUT A MACT DETERMINATION

38.     Plaintiff repeats and incorporates the allegations in the preceding paragraphs.

39.     Sierra Club is a "person" as that term is used in 42 U.S.C. § 7604(a).

40.     EKPC is a "person" as that term is used in 42 U.S.C. § 7604(a)(1).

41.     The case-by-case MACT requirements of Clean Air Act § 112(g) are emission standards or limitations as that term is used in 42 U.S.C. § 7604(a)(1). See 42 U.S.C. § 7604(f)(3).

42.     EKPC is the owner and operator of the Spurlock Station and Spurlock Unit 4.  EKPC is modifying or repeatedly modified Spurlock Station by adding Spurlock 4 over multiple days as the term modified is used in 42 U.S.C. § 7412(g)(2)(A).

43.     Spurlock Station is a coal-fired electric utility steam generating unit, which is a listed source category of hazardous air pollutants under Clean Air Act Section 112(c).  42 U.S.C. § 7412(a)(8); 65 Fed. Reg. 79,825.  No applicable

emission limitations have been established by the Administrator for coal-fired electric utility steam generating units.

44. Spurlock Station is a major source of hazardous air pollutants as those terms are used in 42 U.S.C. § 7412(a)(1). Thus, Spurlock Station is subject to Clean Air Act Section 112(g)(2)(A)'s prohibition on modifying a major source of hazardous air pollutants without a MACT determination.

45. EKPC has commenced and repeatedly modified Spurlock Station by adding Spurlock 4 in violation of Clean Air Act Section 112(g)(2)(A), 42 U.S.C. § 7412(g)(2)(A), and federal and state implementing regulations.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court:

1. Issue a declaratory judgment that EKPC's construction of Spurlock 4, which is also a modification of Spurlock Station, without an approved MACT determination for each emitted hazardous air pollutant is illegal under Section 112 of the Clean Air Act, 42 U.S.C. § 7412;

2. Permanently enjoin EKPC from construction, modification, or operation of Spurlock 4 except in accordance with a MACT determination pursuant to Clean Air Act Section 112(g) and applicable regulatory requirements;

3. Assess a civil penalty against EKPC of up to $37,500 per day for each violation of the Clean Air Act and applicable regulations and pay for beneficial mitigation projects to off-set pollution in the area impacted by the

illegal pollution from the Spurlock 4 plant and in the area where Plaintiffs'

members live, work, and recreate;

      4.      Order EKPC to mitigate past illegal emissions;

      5.      Order EKPC to disgorge profits inequitably obtained through the

violations of the Clean Air Act herein;

      6.      Award Plaintiff its costs of litigation, including reasonable attorneys'

fees; and

      7.      Grant such other relief as the Court deems just and proper.

      Respectfully submitted,


      /s Robert Ukeiley


      _____
      Robert Ukeiley
      Law Office of Robert Ukeiley
      435R Chestnut Street, Suite 1
      Berea, KY 40403
      Tel: (859) 986-5402
      Fax: (866) 618-1017
      Email: rukeiley@igc.org


Of counsel:

Sanjay Narayan
Sierra Club Environmental Law Program
85 Second St., 2d Floor
San Francisco, California 94105
P: 415.977.5769
F: 415.977.5793
sanjay.narayan@sierraclub.org

David C. Bender
McGillivray Westerberg & Bender LLC
305 S. Paterson Street
Madison, WI 53703
P: 608.310.3560
F: 608.310.3561
bender@mwbattorneys.com

<u>CERTIFICATE OF SERVICE</u>

Pursuant to 42 U.S.C. § 7604(c)(3), I certify that I had a copy of this

complaint served on the following by certified mail, return receipt requested:

Attorney General Eric Holder
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

Administrator Lisa P. Jackson
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

/s Robert Ukeiley
_____
Robert Ukeiley